IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) CR 12-09E |
| JOSEPH L. OLLIE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

Pending before the Court is that part of Defendant Joseph Lee Ollie's "Notice of Appearance Request that Trial Counsel Withdraw From This Case" [ECF #40] which we have treated as a motion to withdraw his plea of guilty to the Indictment filed against him at CR12-09E.

### I. Background.

On March 13, 2012, an Indictment was filed against Mr. Ollie at CR12-09E that charged him with violating 18 U.S.C. § 922(a)(6)(falsification of a firearms purchase form) and 18 U.S.C. §924(a)(1)(A) (falsification of a firearm transaction record). Mr. Ollie was arraigned by Magistrate Judge Baxter of this Court and pleaded not guilty to the Indictment on March 27, 2012. See Magistrate Judge's Report of Arraignment dated March 27, 2012 [ECF: #11]. On or about October 17, 2012, the Court was informed by defense counsel of Mr. Ollie's desire to change his plea to guilty with respect to both counts of the Indictment and a change of plea hearing was noticed by the Court. See Notice of Hearing dated October 17, 2012. On December 5, 2012, the change of plea hearing took place during which a plea colloquy was conducted in Open Court. Based upon Defendant's responses to numerous questions, the Court accepted Mr. Ollie's guilty plea as to both counts of the Indictment at CR12-09E.

On December 28, 2012, Mr. Ollie filed a "Notice of Appearance Request that Trial Counsel Withdraw From This Case" ("Notice") which contained: (1) a request to have his current counsel, Attorney Thomas Patton ("Attorney Patton") removed as his counsel and new counsel appointed; and (2) a request to have his guilty plea withdrawn. In particular, Mr. Ollie listed the following reasons in his Notice as to why he should be able to withdraw his guilty plea. First, Defendant was never arraigned, Attorney Patton never told that him he had the right to be taken before a magistrate judge, arraigned, and told of the offense charged in the indictment and the specific sentence he would face, and it was not until December 5, 2012 that Mr. Ollie was read the Indictment. Notice, ¶ 3. Second, Attorney Patton did not inform Defendant prior to the plea colloquy of the elements of the crime with which he was charged and the penalties he would face. Id. at ¶ 4. Third, Attorney Patton gave Defendant incorrect information and misinformation that resulted in his pleading guilty, said incorrect information/misinformation being that he did not advise Petitioner that he had a right to request a suppression hearing with respect to the police questioning Defendant after he told the officer he wanted an attorney, that he had a right to a jury trial, and that there was a "slim possibility of parole." Id. at ¶¶ 5-11.

On January 23, 2013, we held a hearing on Mr. Ollie's Notice. By Memorandum Order dated January 24, 2013, we granted Mr. Ollie's request to have his current counsel removed and new counsel appointed and deferred ruling on Defendant's request to withdraw his plea of guilty to the Indictment until new counsel was appointed who could discuss his request with Mr. Ollie. Once new counsel, Attorney Foreman, was appointed, we set a hearing date on this issue. The hearing took place on March 4, 2013 at which time Mr. Ollie and former defense counsel Attorney Thomas Patton ("Attorney Patton") testified.

At the hearing, defense counsel questioned Mr. Ollie about a number of the contentions he raised in his Notice. With respect to the misinformation/incorrect information allegation, Mr. Ollie explained that he meant that "[d]uring the suppression hearing, it would have been the first time that Mr. Patton had related to me about entering a guilty plea." March 3, 2013 Hearing on Notice Transcript ("Hearing on Notice Transcript"), p. 12. Mr. Ollie also explained that the only reason he pleaded guilty at the hearing was because Attorney Patton told him to do so because no jury would believe that he had not signed the documents in question and that Attorney Paton was not going to take the case to trial. Id. at p. 13. Mr. Ollie also claimed that he and Attorney Patton never had a conversation about the 12-09E case until he was at the December 5, 2012 hearing. Id. at p. 15.

At the conclusion of the hearing, defense counsel argued that for the following reasons, Defendant should be allowed to withdraw his guilty plea. First, "[Mr. Ollie] on numerous occasions has asserted his innocence." Hearing on Notice Transcript, p. 73. See also Id. ("at no time anywhere in this transcript did this individual ever say the words I'm guilty to any of these offenses.") Second, Mr. Ollie testified that it was not until the plea hearing that he even knew he had the right to a suppression hearing:

> . . . When asked by your Honor about – you explained to him what a suppression hearing was, and while he may not have understood the whole of what a suppression issue would be and maybe he didn't understand until he got back to the jail and talked to other members in the jail. Your honor, that was the first time he was hearing he even had a right to have a suppression hearing. And when asked if he wanted one, his answer wasn't yes or no, it was about what his attorney told me, that I don't have a basis for that. It's not that he didn't want one or that he didn't think he had a merit to one.

Id. Third, counsel argued that "nothing has been presented by the government that would show that they would be prejudiced in any way in allowing this individual to withdraw his guilty plea and proceed to trial." Id. at p. 74. In support thereof, counsel emphasized that Mr. Ollie's guilty

3

plea had been taken only three months prior, and "there are no allegations that witnesses are dead, have relocated or that they couldn't proceed to trial, and that they would be prejudiced in any way with allowing him to withdraw his plea." Id. Finally, defense counsel argued:

> If you look at his numerous pro se petitions, and what Mr. Patton, the cursing at him and swearing at him about when he would try to bring up what his defense was and how he believed he was factually and legally innocent, just because his attorney didn't want to listen to him and wanted him to plead guilty, doesn't mean that he didn't have a defense. And as the defendant, the person with the ultimate right to assert his constitutional right to a trial by jury, that really was thwarted by Mr. Patton's ineffective representation in simply refusing to discuss anything with respect to a defense, telling him, apparently in colorful language, that he didn't believe he had a defense and there is no way he could argue that to the jury. Whether Mr. Patton felt it was a strong case or not, ultimately, the decision of whether or not to plead guilty or to go to trial, rests with the defendant. And, clearly, this gentleman has come before you today saying that was not his intent, he was not well informed about what was going on, and it was only upon reflection that he realized the decision he made was improper. And that, in fact, he is not guilty of the charges, I would ask that you allow him to withdraw his guilty plea.

Id. at pp. 74-75.

**II. Legal Analysis.**

Although "motions to withdraw guilty pleas made before sentencing ... should be granted freely," "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." Gov't of Virgin Islands v. Berry, 631 F.2d 214, 219 (3d Cir. 1980) (citation omitted); United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001) (citing United States v. Martinez, 785 F.2d 111 (3d Cir. 1986)). Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B): "[a] defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if: . . . (B) the defendant can show a fair and just reason for requesting the withdrawal."

Thus, once a defendant has pleaded guilty, the burden is on the defendant to establish "a fair and just reason" for the withdrawal of said guilty plea. There is a three factor inquiry that

4

the court must undergo in determining whether a fair and just reason has been established:
(1) whether the defendant asserts his (factual) innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea. Brown, 250 F.3d at 815(citing United States v. Huff, 873 F.2d 709, 711(3d Cir. 1989)). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty."

**A. Innocence inquiry.**

With respect to a defendant's assertion of innocence, we have held, and other district courts have agreed, that "[t]o unsettle a valid plea . . . , defendant's assertion of innocence must be credible." See U.S. v. Smith, 818 F. Supp. 123, 126 (W.D. Pa. 1993) (citing U.S. v. Allen, 668 F.Supp. 969, 974 (W.D. Pa.) (J. Diamond)). See also U.S. v. D'Amelio, 2002 WL 1067769, *2 (E.D. Pa.) (same); U.S. v. Lewis, 2002 WL 572341, *1 (E.D. Pa.) (same). Applying this rule of law to the matter at hand, we find Mr. Ollie's assertion of innocence to be incredible. We so find because the factual basis underlying his innocence assertion changed between the time Mr. Ollie filed his *pro se* Notice asking to withdraw his guilty plea and when he testified at the hearing on his request to withdraw his guilty plea. In particular, in the Notice, Defendant contended he was innocent of the charges in the Indictment because he is uneducated, did not understand the form he filled out, and as a result, mistakenly made a false statement to obtain a weapon. See Notice, ¶¶ 1-2. Thereafter, at the hearing on the Notice, Mr. Ollie testified "that I wasn't the one that signed the documents." See Hearing on Notice Transcript, p. 13. In further support of the conclusion that Mr. Ollie's assertion of innocence is incredible is Attorney Patton's testimony at the hearing that Mr. Ollie "never denied filling out the [ATF] form." Id. at

p. 62. Additionally, Mr. Ollie's argument of innocence on the basis that he did not sign the forms in question is incredible in light of the following testimony at the change of plea hearing, after the Government concluded its statement of "what the government would expect to be able to prove here if the case were to go to trial," which including stating that Mr. Ollie filled out the forms in question:

> The Court: "Do you agree with his statement of what happened, Mr. Ollie?"
> The Defendant: "Yes."

Id. at p. 18.

### B. Strength of Defendant's reason to withdraw the plea inquiry.

We find Mr. Ollie's reasons for why he should now be permitted to withdraw his guilty plea to be weak. First, Ollie's contention that he was never arraigned in this case is simply incorrect. A review of the docket in this case by the Court, of which the Court takes judicial notice, shows that Mr. Ollie was arraigned by Magistrate Judge Baxter on March 27, 2012. See Magistrate Judge's Report of Arraignment dated March 27, 2012 [ECF: #11]. Additionally, Attorney Patton testified credibly at the Hearing on Notice that "[w]e had an arraignment in this case . . . ." Hearing on Notice Transcript, p. 51.

Second, Mr. Ollie's contention that he was never read the Indictment until the day of the plea colloquy, and that Attorney Patton did not inform him, prior to the plea colloquy, of the elements of the crime with which he was charged and of penalties he was facing, is contradicted by Attorney Patton's credible testimony at the hearing that while he cannot specifically recall reading the CR12-09E Indictment to Defendant, he would never stand up in front of the magistrate and enter a plea at an arraignment on behalf of a client, as he did for Mr. Ollie, without having sufficiently apprised his client of the charges against him and the maximum penalties, and that with respect to Mr. Ollie, he was "confident that [he] did it because [reading

6

to indictment to a defendant, going over the elements of the offense and maximum possible penalties is] just the first step that [I] do every time I have an initial meeting with a client." Id., pp. 51-52. Attorney Patton also testified credibly that he specifically recalled going over the guidelines and the maximum penalties with Defendant prior to the December 5, 2012 change of plea hearing. Id., p. 64. Additionally, at the hearing, the Government introduced into evidence the following items from Attorney Patton's case file: (1) a note dated October 12, 2012, written by the Federal Public Defender's investigator, that indicates that on that date, Attorney Patton and the investigator met with Defendant and that with respect to the "lie and buy" case, which was Attorney Patton's nickname for this case, reviewed elements and jury instructions; and (2) a copy of the Third Circuit's standard jury instruction 6.18.922A, "False Statement in Purchase of a Firearm (18 U.S.C. § 922(a)(6))," which lists the elements of said crime.[1] See Exs. 1-2. Finally, even if Attorney Patton had never read the Indictment to Mr. Ollie nor told him what were the elements of the crime with which he was charged and did not give him accurate notice of the penalties he is facing, at the change of plea hearing the Court: (1) offered to read the Indictment to Defendant (Defendant stated "[t]hat won't be necessary") and summarized the charges against him, including asking for an explanation with respect to the falsification of a firearm transaction record, when Mr. Ollie stated that he did not understand; (2) informed Defendant of the elements of the crimes with which he was charged in the Indictment; and (3) gave Defendant notice of the penalties he was facing, under both the United States Code and the advisory sentencing guidelines. See Change of Plea Transcript, pp. 4, 9-15.

Third, Defendant's contention that he and Attorney Patton never discussed the CR12-09E case until the date of the plea hearing is contradicted by Attorney Patton's credible testimony

---

[1] The file also contained Third Circuit Standard Jury Instructions 6.18.922A-1, "Firearm Offenses-Dealer Defined;" 6.18.922A-3, "Firearm Offenses- Material Defined."

7

that he did discuss the case with Mr. Ollie. See Hearing on Notice Transcript, p. 55 ("He didn't want to discuss that [CR12-09E] case as much as he wanted to discuss the 12-18 case. But I talked with him about pleading guilty to that case more than one time prior to the day of the guilty plea."); pp. 56-57 (same). Additionally, the notes from the Federal Public Defender's investigator on August 29, 2012 and October 12, 2012, indicate that Attorney Patton and Mr. Ollie met and discussed the "lie and buy" case, which was Attorney Patton's nickname for the 12-09E case. See Exhibit 1.

Fourth, Mr. Ollie's contention that he did not know about the plea hearing until December 5, 2012, when he met with Attorney Patton prior to the hearing is contradicted by Attorney Patton's credible testimony that this statement by Mr. Ollie is "not accurate." Transcript, p. 52.

Fifth, with respect to Mr. Ollie's contention that it was not until the plea hearing that Mr. Ollie was informed that he was entitled to a suppression hearing, even if this allegation if true and Attorney Patton did not discuss with Mr. Ollie his right to a suppression hearing prior to the plea hearing, during the course of the plea colloquy, this Court queried to Mr. Ollie and Attorney Patton at the change of plea hearing as follows:

> The Court: Has he made any confession or admissions to the police or other representatives of the government concerning this matter, Mr. Patton?
>
> Mr. Patton: He did make a statement, a brief statement to the Pennsylvania State Police.
>
> The Court: Okay, If for any reason you feel that any confession or statement that you made was not freely and voluntarily made, you are entitled to have an evidentiary hearing or what we sometimes call a suppression hearing, prior to trial to have the court determine is the confession or admission or statement was freely and voluntarily made. Would you want me to conduct a hearing like that?
>
> The Defendant: My attorney told me that I don't have any --- I guess defenses.

8

> The Court: Is that your advice, Mr. Patton.
>
> Mr. Patton: Yes, your Honor, I don't believe there are any grounds to really challenge the statement. It was Mirandized and he executed the warning. When he asked to stop speaking, there was a little back and forth between the trooper as to whether he wanted to stop speaking completely or if they could go on. She asked one more question, he did not answer that question, said that he wanted a lawyer the questioning at that point stopped. So I do not believe that there would be a – really non-frivolous basis upon which to file a motion to suppress.
>
> The Court: Okay. . . .

Id. at p. 13. In light of this questioning, Defendant was sufficiently apprised by the Court of his right to a suppression hearing and Mr. Ollie certainly implied by his response to the Court's question as to whether he wanted a suppression hearing, that he did not want one. That after the fact, Mr. Ollie changed his mind about wanting a suppression hearing does not negate his response at the hearing or provide a strong basis for being permitted to withdraw his guilty plea.

Sixth, with respect to Defendant's contention that Attorney Patton never told him that he had the right to a jury trial, even if this contention is true, it does not warrant allowing Defendant to withdraw his guilty plea given that this Court told Mr. Ollie during the change of plea hearing that he was entitled to a jury trial and Defendant stated that he understood he had that right:

> The Court: First of all, do you understand that under the Constitution and laws of the United States, you are entitled to a speedy and a public trial by a jury on the charges contained in the indictment?
>
> The Defendant: I do.

Plea Hearing Transcript, p. 5.

Seventh, Defendant's argument that he should be able to withdraw his guilty plea because Attorney Patton did not inform him of the "slim possibility of parole" is unpersuasive given that the Sentencing Reform Act abolished parole for federal offenders in 1984. See Sentencing

Reform Act of 1984, Pub. L. 98-473; Graham v. Florida, 130 S.Ct. 2011, 2050 (U.S. 2010) (discussing how Congress abolished parole for federal offenders in 1984).

Eighth, with respect to Mr. Ollie's contention that he should be entitled to withdraw his plea because Attorney Patton refused to consider Defendant's stated defenses, told him a jury would not believe that he had not signed the documents in question, that he was not going to take the case to trial, and that he needed to plead guilty to the case, the following relevant inquiry was asked of Mr. Ollie during the plea hearing:

> The Court: . . . Have you had an ample opportunity to discuss your case with Mr. Patton?
> The Defendant: I did.
> The Court: Have you told him all of the facts in connection with the charges?
> The Defendant: Yes.
> The Court: Are you satisfied with the job he has done for you?"
> The Defendant: Yes.

Plea Hearing Transcript, p. 5. Thereafter, the Court asked "Mr. Ollie, has anyone threatened you or anyone else forced you in any way to indicate that you want to plead guilty here?" to which Mr. Ollie responded "No." Id. at p. 12. We also queried: "Do you understand that you may not, at a later date after today, claim that there were any promises, representations, agreements, understandings or threats made by any person that motivated or caused you to enter this plea, other than those that you have an opportunity to tell me about here and now in open court; do you understand that?" Id. at 14. The Defendant's response was "Yes." Id. Additionally, Attorney Patton testified credibly that he discussed with Defendant potential defenses, including arguing that Mr. Ollie had filled out the ATF forms but because he could not read well, he did not understand them, and that he even looked into having Mr. Ollie tested with respect to his reading comprehension, but that once Mr. Ollie filed *pro se* a 20-page brief in the CR12-18E felon in possession of a firearm case, he opined, and told Mr. Ollie of his opinion, that a jury

10

would never believe that Defendant did not understand the ATF form. Hearing on Notice transcript, pp. 55-56, 59-61. See also Id., p. 55 ("[We] went over potential defenses with him on both cases . . . ."); Id. ("We discussed ways in which he thought he may be not guilty of that offense. . . . So we discussed ways to defend that case . . . .") Attorney Patton's testimony is supported by the Federal Public Defender investigator's notes from Attorney Patton's August 29, 2012 meeting with Defendant which state: "case #1 - False Statements on Firearm Purchase Form. difficult to defend on merits." See Exhibit 1.

In light of this testimony and evidence, we reject Defendant's contention that he should be permitted to withdraw his guilty plea because Attorney Patton refused to consider Defendant's stated defenses, told him a jury would not believe that he had not signed the documents in question, that he was not going to take the case to trial, and that Defendant needed to plead guilty to the case.

Finally, with respect to the contention that Defendant should be able to withdraw his guilty plea because he never said "I am guilty," we note that when the Court asked Mr. Ollie: "What made you decide to plead guilty, Mr. Ollie?" the Defendant's response was "[t]o accept my responsibility and through conversations I had with my attorney." We interpreted, and continue to interpret that statement as an admission of guilt; one does not typically "accept my responsibility" for actions that one has not committed, especially when the consequence of the acceptance is a felony conviction.

### C. Prejudice inquiry.

Turning to the prejudice query, while we agree with Defendant that the United States would not be prejudiced by allowing the Mr. Ollie to withdraw his guilty plea at this stage in the proceedings, this lack of prejudice does not warrant allowing the defendant to do so. "The

absence of prejudice is not material where a defendant fails to establish sufficient grounds for permitting withdrawal of his plea." Lewis, 2002 WL 572341 at *1.

### III. Conclusion.

We find that Defendant has failed to establish "a fair and just reason" for the withdrawal of his guilty plea in this case. Accordingly, to the extent that his "Notice of Appearance Request that Trial Counsel Withdraw From This Case" [ECF #40] is a motion to withdraw Defendant's plea of guilty to the Indictment filed against him at CR12-09E, said motion shall be denied:

### ORDER

AND NOW, this 3 2 day of May, 2013, it is hereby ORDERED, ADJUDGED, and DECREED THAT that part of Defendant Joseph Lee Ollie's "Notice of Appearance Request that Trial Counsel Withdraw From This Case" [ECF #40] which we considered to be a motion to withdraw Defendant's plea of guilty to the Indictment filed against him at CR12-09E, is DENIED.

Maurice B. Cohill, Jr.
Senior District Court Judge