IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) |
| | ) CRIMINAL NOS. 1:12-09 |
| JOSEPH LEE OLLIE, | )                  1:12-18 |
| Defendant. | ) |

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

**I. Introduction**

Defendant has filed Motions to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) at each of his two case numbers. [No. 12-09, ECF No. 144; No. 12-18, ECF No. 186]. He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). He contends that his medical conditions render him particularly susceptible to the COVID-19 virus while incarcerated at FCI Elkton. The Government has filed a Response [No. 12-09, ECF No. 151; No. 12-18, ECF No. 194], and Defendant filed a Reply [No. 12-09, ECF No. 152; No. 12-18, ECF No. 195]. After careful consideration of the submissions, and for the reasons set forth below, the Motions are granted.

**II. Background**

Defendant's current sentence arises from two federal cases. In case 12-cr-9, Defendant was charged by a grand jury for the Western District of Pennsylvania in a two-count Indictment with falsification of a firearms purchase form (Count One) and falsification of a firearms transaction record (Count Two). [No. 12-09, ECF No. 1]. Defendant pled guilty to both counts on December 5, 2012. [No. 12-09, ECF No. 39]. In case 12-cr-18, the grand jury returned a three-count Indictment against Defendant charging him with possession of a firearm by a convicted felon

1

(Count One), possession of a firearm while subject to a domestic abuse order (Count Two), and possession of a stolen firearm (Count 3). [No. 12-18, ECF No. 1]. The case went to trial, and the jury found Defendant guilty as to all three counts. [No. 12-18, ECF No. 92]. At a consolidated sentencing hearing held on September 25, 2014, the Court sentenced Defendant to an aggregate sentence of 144 months incarceration to be followed by 3 years of supervised release. [No. 12-09, ECF No. 85; No. 12-18, ECF No. 128].

In 2017, Defendant filed motions pursuant to 28 U.S.C. § 2255 seeking release from his sentence on multiple grounds, including sentencing counsel's failure to challenge whether Defendant's prior conviction for Pennsylvania second-degree burglary qualified as a crime of violence under the U.S. Sentencing Guidelines. This Court denied Defendant's Motions. [No. 12-09, ECF No. 122; No. 12-18, ECF No. 165]. Subsequently, the United States Court of Appeals for the Third Circuit vacated those orders and remanded the cases for further proceedings. No. 12-09, ECF No. 131; No. 12-18, ECF No. 174]. On June 24, 2020, a 2255/Resentencing Hearing was held, during which Defendant's 2255 Motions were granted in part and Defendant was resentenced to a combined term of 93 months in prison. Prior to the June 24, 2020 hearing, Defendant's projected release date was October 21, 2025. [No. 12-09, ECF No. 144, at 2; No. 12-18, ECF No. 186, at 2]. After resentencing, Defendant would complete his sentence within the next 1-2 years depending on the application of good conduct time. Id. at 2, n.2. Here, Defendant asks for a reduced sentence of time served, followed by a three-year term of supervised release. The three-year term of supervised release would include six months in a halfway house. Id. at 9. If released, Defendant agrees to allow the BOP to place him in a 14-day quarantine period prior to release.

**III. Analysis**

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of

2

Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." United States v. Somerville, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020) (citing 18 U.S.C. § 3582(c)(1)); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction….
>
> And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). Because the Defendant has exhausted his administrative remedies, I turn to a consideration of whether, after considering the factors set forth in section 3553(a), the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."[1]

---

[1] Before a prisoner can file a compassionate release motion, administrative rights must be exhausted. The Government concedes that the Defendant has exhausted his administrative remedies and that his motions are ripe for consideration. [No. 12-09, ECF No.151, at 6 & n.2; No. 12-18, ECF No. 194, at 6 & n.2].

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D).

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). Here, Defendant contends that his diagnosed medical conditions, including diabetes, high-blood pressure, and obesity, satisfy this requirement.

There is some dispute as to the continued applicability of the policy statement and related commentary. It appears "in the commentary to the 2018 version of 1B1.13. The Sentencing Commission has not yet amended 1B1.13 or its commentary to account for the First Step Act." Handerhan, 789 F. App'x at 925, n.2 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). The Government urges that the commentary to the policy statement continues to apply. [No. 12-09, ECF No. 151, at 8 & n.3; No. 12-18, ECF No. 194, at 8 & n.3]. I note that a "majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Rodriguez, 2020 WL 1627331, at * 4 (E.D. Pa. Apr. 1, 2020) (citations omitted). I find the Rodriguez court's analysis of the issue to be persuasive. See also

4

United States v. Somerville, 12cr225, 2020 WL 2781585, at * 6-7 (W.D. Pa. May 29, 2020) (finding that the "catch-all" provision under (D) permits the court the authority to independently assess whether there are "extraordinary and compelling reasons.") (citations omitted). Nevertheless, I need not resolve the issue of the continued applicability of the policy statement because the Government concedes that Defendant's Type II diabetes, which is confirmed by his medical records, is "a 'serious physical or medical condition' that 'substantially diminishes' the Defendant's ability 'to provide self-care within the environment of a correctional facility' during the pandemic, and is therefore an 'extraordinary and compelling reason' for release under 18 U.S.C. 3582(c)(1)(A)(i)." [No. 12-09, ECF No. 151, at 8; No. 12-18, ECF No. 194, at 8].

The Government likewise does not dispute that officials at FCI Elkton, where Defendant is incarcerated,[2] initially struggled to contain the Covid-19 outbreak at that facility. [No. 12-09, ECF No. 151, at 11; No. 12-18, ECF No. 194, at 11]. Although the Government cited evidence of diminishing case numbers at FCI Elkton in its June 12, 2020 Response as a sign that BOP efforts to contain the virus outbreak there may be working, Defendant attached evidence to his Reply Brief, dated one week later, showing 45 positive tests just in that week. [No. 12-09, ECF No. 151, at 11-12, ECF No. 152, at 4-5; No. 12-18, ECF No. 194, at 11-12, ECF No. 195, at 4-5]. Defendant also cites numerous cases and statistics reflecting the severity of the outbreak at FCI Elkton and the apparent inadequacy of BOP efforts to control the situation, including numerous cases granting medically-vulnerable FCI Elkton inmates compassionate release. [No. 12-09, ECF No. 144, at 5-8; No. 12-18, ECF No. 186, at 5-8]. Nevertheless, since the government concedes, and I agree, that Defendant has demonstrated extraordinary and compelling reasons based on his medical diagnosis, I do not need to address this issue further.

---

[2] Although Defendant is currently designated to FCI Elkton, he has been housed at the Indiana County Jail in Indiana, Pennsylvania since January 2020 in anticipation of his 2255/resentencing hearing which took place on June 24, 2020 before this Court. Although I recommended in the Amended Judgment Order after that hearing that the BOP redesignate Defendant to an institution other than FCI Elkton, there is no guarantee that the BOP will follow my recommendation or that the alternative institution will be free of the COVID-19 concerns that have plagued FCI Elkton.

Because there is no dispute as to whether the Defendant has demonstrated extraordinary and compelling reasons, I need only consider the factors set forth in section 3553(a), to the extent that they are applicable, and whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. The Government urges that such considerations mandate the denial of the request for relief. In particular, the Government contends that the Defendant remains a danger to society, and that consideration of the 3553(a) factors support the original sentence. That is, the Government argues that the Defendant's possession of firearms and his other prior crimes mandate a denial of the request for compassionate release.

I remain concerned with the nature and circumstances of the offense at issue and with the Defendant's long criminal history, particularly because it includes the carrying of firearms, including the possession of a firearm while subject to a domestic abuse order. Yet, Defendant is now 62 years old and has been incarcerated since 2011, with a projected release date within 1-2 years. There is no indication Defendant has been subject to disciplinary actions while incarcerated. "Disciplinary record in prison bears on this assessment and is illustrative of character." United States v. Ladson, 2020 WL 3412574, at * 8 (E.D. Pa. June 22, 2020). Further, it appears that the Defendant has engaged in productive rehabilitative efforts during his incarceration, including the completion of courses on preparing a resume, typing, reentry, investing in real estate, and starting a limited liability corporation. [No. 12-09, ECF No. 144, at 8-9 & Ex. F; No. 12-18, ECF No. 186, at 8-9 & Ex. F]. While in state prison on related charges, Defendant completed a violence prevention program with strong performance in the class. Id. A court should "consider the inmate's participation in prison programming in tandem with the inmate's disciplinary record." Ladson, 2020 WL 3412574, at *8. Additionally, the Defendant has a release plan which includes serving the first six months of his three-year term of supervised release at a halfway house. [No. 12-09, ECF No. 144, at 9, ECF No. 152, at 6; No. 12-18, ECF No. 186, at 9, ECF No. 195, at 6]. Defendant further represents that he is committed to following social distancing measures and wearing a face covering in order to protect his own health and

the health of those in the community with whom he may come into contact. See id. Defendant also agreed at his June 24, 2020 resentencing hearing that he would allow the BOP to place him in a 14-day quarantine period prior to his release in order to minimize the possibility of any spread of COVID-19 to the public as requested by the Government. [No. 12-09, ECF No. 151, at 15-16; No. 12-18, ECF No. 194, at 15-16].[3] This brief delay in release also will allow the BOP to make arrangements for processing his release and Probation to make arrangements with the halfway house. In short, in light of the Defendant's rehabilitative efforts while incarcerated, the apparent absence of any disciplinary conduct while incarcerated, his release plan to serve the first six months of release at a halfway house, and his commitment to following appropriate social-distancing measures, I find that the Defendant is not a danger to the community.

I also find that reducing Defendant's sentence is consistent with section 3553(a) factors. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a). Considering the "nature and circumstances of the defendant," I find that his rehabilitation and good conduct weigh in favor of a sentence reduction. I must also consider the "need for the sentence imposed." A sentence should be "sufficient, but not greater than necessary." While I do not debate the seriousness of the Defendant's crimes, I believe that "the significant dangers" that the Defendant "faces as an incarcerated person suffering from [Type II diabetes] during the COVID-19 pandemic – does not

---

[3] The Government further represents that this period of time will also allow the BOP to "fulfill its obligations under certain federal statutes." Id.

undermine the seriousness of his crime or mean others will not be deterred from committing similar crimes." Ladson, 2020 WL 3412574, at *10. Further, his engagement in the rehabilitation programs offered in state prison and at FCI Elkton and his efforts at continued education weigh in favor of a reduction. As to the remaining considerations, the Government has not indicated that granting the motion will create unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense is inapplicable.

As another district court in the Third Circuit recognized, "it is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis." United States v. Catanzarite, 2020 WL 2786927, at * 3 (D. N.J. May 29, 2020). After careful consideration, and based upon the record before me, I conclude that Defendant would not endanger his community if released and that the 3553(a) factors weigh in favor of a sentence reduction. Consequently, Defendant's sentence is reduced to time served. The three-year term of supervised release remains intact as do all terms and conditions previously imposed. Further, Defendant's supervised release conditions shall be modified to add the special condition that Defendant be placed in halfway house, also known as the residential reentry center, for a period of six months. Defendant shall remain in custody until the Probation Office can finalize arrangements for placement at the residential reentry center.

As set forth above, the Government has requested that the Bureau of Prisons be allowed to place the Defendant in a 14-day quarantine period and to conduct medical clearance before release in order to minimize the possible spread of COVID-19 from the Defendant to the general public. As also set forth above, Defendant does not object to this request. I note, however, that Defendant has been at the Indiana County Jail, rather than FCI Elkton, since January of this year. If he is still at that facility, that facility may be able to screen him for the virus, thus reducing the need for a period of confinement at the BOP. The BOP is ordered to release the Defendant as soon as is practical.

THEREFORE, this 24th day of June, 2020, it is ordered that Defendant's Emergency Motions to Reduce Sentence [No. 12-09, ECF No. 144; No. 12-18, ECF No. 186] are GRANTED and his sentence modified as more fully set forth above.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge